## JOHN M. BACH *v.* R. and O. ABBOTT.

A purchased property in the name of B, the title having been made to the latter. B afterwards executed notes payable to A, secured by mortgage upon the property. These notes were negotiated by A. A judgment creditor seized the property, as belonging to A, alleging that the purchase in the name of B was a simulation. *Held:* That the third person, who had taken the notes without notice, could not be affected by the equities existing between the original parties, and was entitled to be paid out of the property, although the use of B's name in the the purchase of it was a simulation.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *T. W. Collins*, for plaintiff. *M. Grivot*, for appellant. The judgment of the court (*Eustis*, C. J., absent,) was pronounced by

SLIDELL, J. In June, 1848, *Abbott*, purporting to act as the attorney of *Michaela Cox*, purchased a slave at sheriff's sale. The sheriff's deed was made to her; *Abbott* was at the time insolvent. A judicial mortgage, in favor of *Bach*, stood on record against him. In 1850, *Michaela Cox* executed a mortgage of the slave in favor of *Abbott*, to secure two promissory notes, made by her to his order, for $250 each. *Abbott* endorsed these notes in blank, and gave them, for a valuable consideration, to *Van Dalson*, before whom, as notary, the act of mortgage was passed. *Van Dalson*, for a valuable consideration, as is alleged, passed them to *Mrs. Gottschalk*.

The controversy now before us is between *Mrs. Gottschalk*, who, as a mortgage creditor, claims a preference upon the proceeds of the sheriff's sale of the slave, made under a *fieri facias* in the suit of *Bach* v. *Abbott*, and *Bach*, who claims by virtue of his judicial mortgage recorded against *Abbott's*.

The district judge was of opinion that the purchase in the name of *Michaela Cox* was a simulation, and that *Abbott* was the real owner. His conclusion, we think, is authorized by the evidence. He gave the proceeds of the sale to *Bach*, disregarding the claim of *Mrs. Gottschalk*.

As against *Michaela Cox*, *Abbott* and *Van Dalson*, we think the property was rightfully subjected to the payment of the judicial mortgage. Is *Mrs. Gottschalk* subject to the same equity? In answering this question, we will assume, for the present, that *Mrs. Gottschalk* was an innocent transferree of the mortgage, having no notice of the simulation and of the rights of *Bach*, as the holder of a judicial mortgage against *Abbott*.

If *Michaela Cox* had sold the slave to an innocent purchaser, for a valuable consideration, before *Bach* made his seizure, we have no doubt such purchaser would have been unaffected by *Bach's* judicial mortgage. She was the apparent owner, and the secret equity which could have been enforced by *Bach* against her, would not have been permitted to disturb a *bonâ fide* purchaser from her. See *Stockton* v. *Craddock*, 4th Ann. 282. *Richardson* v. *Hyams*, 1st Ann. The same rule applies, we think, to *bonâ fide* mortgagees. *Foster's Heirs* v. *Foster's Administrator*, 11 L. R. 408. Its application is not affected by the circumstance, that *Mrs. Gottschalk* is not the original mortgagee, but holds through *Van Dalson* and *Abbott*, who were affected by the equity in favor of *Bach*. On the face of the various papers, the title was in *Michaela Cox*, and the transaction fair and regular. The equity in favor of *Bach* was unknown to the public, and even to himself, and was only brought to light by his subsequent vigilance.

A difficulty, however, still remains, and that is, whether *Mrs. Gottschalk* took the mortgage notes without notice of the infirmity with which the title was affected. The district judge has not noticed this point expressly in his written opinion; but we may infer, from the decree he has rendered, that he was not satisfied on that score. Our conclusion, from the evidence as it appears on paper, would have rather been, that the good faith of *Mrs. Gottschalk* was not successfully impeached; but as he heard the witnesses, and had a better opportunity than we have to come to a correct conclusion upon the question of fact, we have thought it proper, in deference to his supposed opinion, to send back the case for further investigation.

It is therefore decreed, that the judgment of the district court be reversed, and that this cause be remanded for a new trial, the plaintiff paying the costs of the appeal.

ROST, J. I assent to the remanding of this cause exclusively upon the ground, that if it turns out that *Mrs. Gottschalk* was affected with notice, it will be unnecessary to decide the other legal questions which the case presents.